UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NADIA ABDELKARIM, ET AL.,,

    Plaintiffs,

v.

ALBERTO R. GONZALES, ET AL.,

    Defendants.
_____/

Case No. 06-14436

Honorable Nancy G. Edmunds

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER AND DISMISS ALL EXCEPT THE LEAD PLAINTIFF, AND REMAND [7]**

Plaintiffs, 59 individuals, filed this action against Defendants, federal government officials, alleging that federal law, 8 U.S.C. § 1447, has been violated by their excessive delay in processing each of their individual applications for naturalization. Plaintiffs jointly seek an order from this Court compelling Defendants to adjudicate each of their individual pending applications without delay.

This matter is before the Court on Defendants' motion, brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this matter should be dismissed for lack of subject matter jurisdiction. Defendants' motion also seeks alternative relief; that this Court sever and dismiss from this action all Plaintiffs but the lead Plaintiff, pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure, and then remand the matter to the proper agency for adjudication of Plaintiff's application for naturalization. For the reasons stated below, this Court DENIES Defendants' motion to dismiss but GRANTS

Defendants' alternative request to sever and dismiss from this action all but one of the named Plaintiffs whose application has not already been adjudicated,[1] and remands this matter for adjudication of that one Plaintiff's application for naturalization.

**I.   Background**

The approximately 59 named Plaintiffs,[2] lawfully admitted for permanent residency, have applied for naturalization. Plaintiffs bring this action under 28 U.S.C. § 1361 (Mandamus Act), 5 U.S.C. § 702, *et seq.* (Administrative Procedures Act), and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act), seeking an order from this Court compelling Defendants to adjudicate all of their pending applications for naturalization (N-400s) "with no delays." (Am. Compl. ¶¶ 64, 67, Prayer for Relief.)  Plaintiffs allege that Defendants are in violation of 8 U.S.C. § 1447 and 8 C.F.R. § 335.3 because at least 120 days have passed since the examination of each Plaintiff without a decision on his or her pending application. (*Id.* at ¶¶ 70, 72, 74.)

Since September 11, 2001, the former Immigration and Naturalization Service has been reconstituted primarily as three separate bureaus within the Department of Homeland

---

[1] At the April 25, 2007 hearing on this matter, Defendants informed the Court that the lead Plaintiff, Nadia Abdelkarim, became a naturalized citizen in February 2007. Accordingly, she cannot serve as the sole Plaintiff in this action.  Plaintiffs' counsel can designate any one of other 58 named Plaintiffs who has not already had his or her application for naturalization adjudicated to serve as the sole remaining Plaintiff in this action.

[2] The exact number of Plaintiffs is unclear.  Although 59 names are listed as Plaintiffs: (1) one of the names (Ahmed Mahdi) is listed twice in the caption but only in one paragraph of the Amended Complaint (Am. Compl. ¶ 42); (2) one paragraph of the Amended Complaint contains allegations about an individual, Charife Bazzi, who is not listed in the caption (*id.* at ¶ 26); and (3) although Fozia Al-Hilo is the eleventh Plaintiff listed on the caption, paragraph 11 of the Amended Complaint is blank.

Security (DHS): United States Citizenship and Immigration Services (USCIS), United States Immigration and Customs Enforcement (ICE), and United States Customs and Border Protection (CBP). With regard to each naturalization applicant, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and is not a risk to national security or public safety. (Reaves Decl. at ¶ 7.) These background checks include reviews of computer database records maintained by DHS agencies, a full criminal and administrative background check by the FBI, and an administrative check under the FBI's National Name Check Program (NNCP). (*Id.*) *See also* 8 C.F.R. § 335.2(b).

The NNCP is responsible for disseminating information from the FBI's Central Records System (CRS). (Cannon Decl. ¶ 4.) Since its inception, the NNCP has experienced extraordinary growth in the number of requests from customers seeking background information from FBI files on individuals for various matters; i.e., government employment or appointment, attendance at a White House function, naturalization, admission to the bar, or a visa to apply for admission to the United States. (*Id.*) More than 70 federal, state, and local agencies regularly request FBI name searches. (*Id.*) The FBI also conducts numerous name searches for its counterintelligence, counterterrorism, and homeland security efforts. (*Id.* at ¶¶ 5-12.)

A number of variables affect the time it takes to resolve a particular name check. (Cannon Decl. ¶¶ 13-15, 20.) While only a small percentage will experience significant delays, that percentage translates into thousands of individual applicants. (*Id.* at ¶¶ 14, 17-19.) Given the number of variables involved, the FBI cannot provide a specific or general time frame for completing any particular name check submitted by USCIS. (*Id.* at ¶ 20.)

The name check requests are processed on a first-in, first-out basis, unless expedited processing is requested. (*Id.* at ¶ 19.) The religious affiliation of any particular applicant is not identified in the name check request, and the FBI does not sort, rearrange, delay, or manipulate the order in which name check requests are resolved, other than to respond to a request to expedite. (*Id.* at 22-24.)

Plaintiffs' Amended Complaint makes separate allegations as to each Plaintiff's application, including: (1) the date the application was filed, (2) the date the initial interview took place, (3) whether the applicant passed the English, U.S. history, and government tests given at that initial interview, and (4) whether the applicant meets the good moral character requirement for naturalization. (Am. Compl. ¶¶ 1-59.) As of December 15, 2006, each of the 59 named Plaintiffs falls within one of the following eight categories:

(1) Seven Plaintiffs do not appear to have filed an N-400 application or have provided an incorrect A-number,
(2) Four Plaintiffs' N-400 applications have been denied or closed,
(3) One Plaintiff had already been naturalized (on August 17, 2006) before the original complaint was filed,
(4) Two Plaintiffs have failed to appear for scheduled fingerprinting or interviews,
(5) Three Plaintiffs have been scheduled or are in the queue to be scheduled for interviews,
(6) Five Plaintiffs' applications became ready for adjudication within 120 days from the date Defendants filed their motion (meaning that all information necessary to make a decision, including results of background and security checks, has been gathered, and those applications are being reviewed for adjudication),
(7) One Plaintiff's file has been on hold due to a criminal investigation regarding Forms N-648 submitted by certain naturalization applicants (which led to the indictment of Dr. Ali Makki in the United States District Court for the Eastern District of Michigan, Case No. 06cr20324, and
(8) Thirty-six Plaintiffs - USCIS is awaiting the results of the FBI name check.

(Reaves Decl. ¶ 17.)[3]

## II.    Analysis

### A.  Subject Matter Jurisdiction

To determine whether this Court has subject matter jurisdiction to consider Plaintiffs' claims under the Immigration and Nationality Act, 8 U.S.C. § 1447(b), the Court must give meaning to the term "examination" in § 1447(b).[4]  Defendants argue that "examination" is not a discrete event.  Rather, that term connotes a process that is not completed until all information is gathered and all background checks completed.  (Defs.' Mot. at 11-12.) Plaintiffs respond that the term "examination" refers to the initial interview of an applicant for naturalization.  Both parties rely on the plain language of § 1447(b) and pertinent agency regulations to support their opposing positions.

---

[3]In a Sur-Reply [13] filed by Plaintiffs on the same day as the April 25, 2007 hearing in this matter, Plaintiffs notified the Court:  (1) of the correct A-numbers for Seven Plaintiffs; (2) that the applications for Two Plaintiffs have been denied; (3) that Five Plaintiffs have been naturalized; and (4) that Two Plaintiffs now claim that they did not originally receive notice to appear for fingerprints and/or interviews but have now received notice and One Plaintiff has been fingerprinted.

[4]Section 1447(b) of the Immigration and Naturalization Act provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period <u>after the date on which the examination is conducted</u> under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C.A. § 1447(b) (West 2005) (emphasis added).

5

This issue does not come before the Court on a blank slate. Numerous district courts have addressed this issue although the Circuit Courts of Appeal have not. Not surprising, there is a split among the district courts.

Defendants rely principally on an early district court decision that interpreted Section 1447(b) in the manner it advocates here. *See Danilov v. Aguirre*, 370 F. Supp.2d 441, 443-44 (E.D. Va. 2005) (construing the term "examination" in § 1447(b) to mean a process that cannot be completed until after the FBI completes a background investigation on the applicant and thus holding that the 120-day period is not triggered until all aspects of the "examination process" are completed). As Defendants observe, a number of district courts have adopted the analysis and result in *Danilov*. *See Martinez v. Gonzales*, 463 F. Supp.2d 569 (E.D. Va. 2006); *Kitilya v. Gonzales*, No. 06-1328-VBF (C.D. Cal. March 27, 2007) (Defs.' Reply, Ex. A); *El Kassemi v. Dep't of Homeland Security*, No. 06-1010, 2006 WL 2938819 (D. N.J. Oct. 13, 2006); *Walji v. Gonzales,* No. 06-1165 (S.D. Tex. Oct. 6, 2006) (Defs.' Mot., Ex. D); *Daami v. Gonzales*, No. 05-3667, 2006 WL 1457862 (D. N.J. May 22, 2006).

Plaintiffs, on the other hand, observe (correctly) that the majority of courts addressing the issue have rejected the reasoning in *Danilov* and have construed the term "examination" in § 1447(b) to mean the agency's initial interview of an applicant for naturalization. *See Al Saleh v. District Director, USCIS Detroit*, No. 06-13372, 2007 WL 925693, *2 (E.D. Mich. Mar. 28, 2007) (citing cases).

This Court agrees with the majority viewpoint, finding the analysis in those decisions to be more persuasive than that advanced by *Danilov* and its progeny. The plain language of § 1447(b), "after the date on which the examination is conducted," implies that there is

a discrete date that triggers the 120-day statutory period. *Id.* This language in § 1447(b) is to be considered along with that in § 1446, which "indicates that the investigative process is separate from the examination." *Id.* Finally, the agency "regulations contemplate a distinction between the examination and the investigation and reflect the agency's interpretation that the 120-day period in Section 1447(b) begins to run from the date of the initial investigation." *Id.* (citing *Hussein v. Gonzales*, No. 306-CV-497J-32MCR, 2007 WL 328691 (M.D. Fla. Jan. 31, 2007) and *Khelifa v. Chertoff*, 433 F. Supp.2d 836, 841 (E.D. Mich. 2006)). For these reasons, this Court adopts Plaintiffs' proposed construction of "examination" in § 1447(b), concluding that it is the initial interview of the applicant for naturalization that triggers the 120-day period provided for in that Section. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

The Court now considers Defendants' alternative arguments that (1) Plaintiffs were impermissibly joined and thus one of the Plaintiff's, whose application for naturalization has not been adjudicated, should have his or her claims severed and the remaining Plaintiffs' claims should be dismissed without prejudice, and (2) the sole remaining Plaintiff's claims should be remanded to the USCIS for an initial decision on this Plaintiff's application for naturalization. The misjoinder argument is addressed first.

### B. Defendants' MisJoinder Arguments

Rule 20(a) has a two prong test for permissive joinder of plaintiffs in a single action: "(1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action." *Id.* at 1351. Plaintiffs must satisfy both prongs of this test. If they do not, "the district court may sever the misjoined

7

plaintiffs, as long as no substantial right will be prejudiced by the severance." *Id.* (citing Fed. R. Civ. P. 21). The decision to sever lies within the Court's sound discretion. *Id.*

Defendants argue that Plaintiffs fail to satisfy the requirements for permissive joinder under Rule 20(a) of the Federal Rules of Civil Procedure and thus one of named Plaintiff's claims should be severed and the remaining Plaintiffs' claims dismissed without prejudice. Despite Plaintiffs arguments to the contrary, this Court agrees with Defendants that severance for misjoinder is proper here. This result is supported by the decision in *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997), which presented substantially similar issues.

In *Coughlin*, 49 Plaintiffs filed a complaint seeking an order from the district court compelling the INS defendants to adjudicate their pending applications or petitions for citizenship. *Id.* at 1349. The INS defendants moved to sever the plaintiffs on the grounds of misjoinder. *Id.* at 1350. The district court, applying Rule 20(a)'s test for permissible joinder, concluded that these 49 plaintiffs failed to satisfy either prong of the two-prong test for joinder and further concluded that severance would not prejudice any substantial rights. *Id.* at 1350-51. That decision was affirmed on appeal.

As to the first, "same transaction" prong, the district court in *Coughlin* observed that this "refers to similarity in the factual background of a claim." *Id.* at 1350. Thus, it reasoned, the plaintiffs' shared procedural problem of a delay in processing their applications, was "not enough to create a common transaction or occurrence." *Id.* The delay in each plaintiff's case varied, as did the reasons for the alleged delay. *Id.*

The same is true here. Although each of the approximately 59 Plaintiffs here alleges a delay in processing their individual applications for naturalization, the reasons for the

8

delays vary and are dependent upon each Plaintiff's particular circumstances. For example, several of the Plaintiffs have failed to appear for scheduled fingerprinting or interviews or failed to submit requested information. (Reaves Decl. at ¶ 17.) Still other Plaintiffs apparently have either provided an incorrect A-number in the Amended Complaint or have not yet filed an N-400. (*Id.*) Moreover, while this case has been pending, name checks for other Plaintiffs have been completed and some applications have been adjudicated. (*Id.*) Plaintiffs' attempt to update the Court as to certain of the Plaintiff's circumstances as of the April 25, 2007 hearing date likewise confirms that, because each Plaintiff's particular circumstances vary, so too will the reasons for a delay in processing an individual's application for naturalization. (*See* Plaintiffs' Sur-Reply [13] filed on April 25, 2007.)

Similar to *Coughlin*, Plaintiffs here also fail to satisfy the second prong of the permissive joinder test -- common questions of fact and law. *Coughlin*, 130 F.3d at 1350. As shown above, the facts underlying an alleged delay in each Plaintiff's individual application for naturalization differ. Moreover, Plaintiffs' attempt to distinguish *Coughlin* by arguing that Defendants have adopted a systematic pattern or policy of intentional delay for Arab males fails. (Resp. at 17.) Although the Introduction to Plaintiffs' Amended Complaint asserts that Plaintiffs are "convinced" that the delay in the adjudication of their applications is due to their ethnicity (Middle Eastern) and gender (male), there is not a single fact alleged in Plaintiffs' Amended Complaint that supports those suspicions or bald conclusions of intentional discrimination against Arab individuals. (Am. Compl., Intro. at 5.) Plaintiffs do not even allege a country of citizenship for the individual Plaintiffs. As the *Coughlin* Court observed, "the mere fact that all Plaintiffs' claims arise under the same

general law does not necessarily establish a common question of law or fact. . . . Indeed, even if Plaintiffs' claims were not severed, the Court would still have to give each claim individualized attention. Therefore, the claims do not involve common questions of law or fact." *Coughlin*, 130 F.3d at 1351.

Because the Court would need to address the unique set of facts underlying each Plaintiff's individual application for naturalization and the reasons for the alleged delay in processing that application, a single action with 59 Plaintiffs would not promote judicial efficiency. *Id.* Accordingly, joinder will not accomplish Rule 20's purpose. *Id.* Finally, no substantial right will be prejudiced by severance. *Id.* (citing Fed. R. Civ. P. 21). The dismissal of all but the lead Plaintiff will be without prejudice.

For these reasons, this Court GRANTS Defendants' motion to sever and DISMISSES WITHOUT PREJUDICE the claims of all Plaintiffs except one of the named Plaintiff's whose application has not already been adjudicated.

The Court now addresses Defendants' final request for a remand.

**C. Remand**

Although this Court has determined that it has jurisdiction under § 1447(b), Defendants' motion also asks this Court to exercise its discretion and remand the sole remaining Plaintiff's case to Defendant USCIS to render an initial decision on that Plaintiff's application for naturalization. This Court GRANTS Defendants motion as to this request for a remand. Section 1447(b) provides the Court with discretion to do so. Moreover, as recently observed in *Al Saleh*, 2007 WL 925693 at *3, this is the course taken by the vast majority of courts addressing the issue of whether "to decide the application in the first

instance" or "to remand the matter to CIS for prompt resolution." *Id.* (citing cases). The rationale is that:

> a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security or public safety. To conduct a hearing without the completion of a background check would contravene Congress' intent that an FBI background is to be completed prior to the adjudication of every naturalization application.

*Shalabi v. Gonzales*, No. 4:06CV866RWS, 2006 WL 3032413, *4 (E.D. Mo. Oct. 23, 2006) (internal quotations and citations omitted). In a similar case, Judge Rosen of this Court remanded, even though the FBI had completed its background check, reasoning that the agencies involved "in the investigative process have a great deal more expertise than the Court in both (i) identifying the potentially problematic information that has been uncovered in a background check, and (ii) following up to determine whether the information truly reflects legitimate national security or public security concerns, or instead is merely a 'false positive.'" *Khelifa*, 433 F. Supp.2d at 844. Judge Rosen, while acknowledging the "widespread judicial concern and frustration that agency action on naturalization applications is unduly delayed in too many cases," nonetheless found "it more prudent to allow CIS the opportunity to determine Plaintiff's entitlement to citizenship in the first instance." *Id.* The same reasoning applies here. Accordingly, this Court GRANTS Defendants' motion, and REMANDS for a prompt determination of the sole remaining Plaintiff's application for naturalization.

### III.  Conclusion

For the above-stated reasons, the Court:

1. DENIES Defendants' motion to dismiss for lack of subject matter jurisdiction;

2. GRANTS Defendants' motion to sever and DISMISSES WITHOUT PREJUDICE the claims of all Plaintiffs except one of the named Plaintiffs whose claim has not already been adjudicated; and

3. GRANTS Defendants' motion to remand to the USCIS for a prompt determination of the sole remaining Plaintiff's application for naturalization.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: April 30, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 30, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager